MANURSING ISLAND BEACH CORPORATION, Appellant, *v.* CLARENCE SACKETT and Others, Respondents.

Second Department, December 21, 1923.

**Boundaries — action to determine boundary line — defendants do not appeal — appellate court will not fix line more favorable to defendants than that fixed in judgment — findings of fact by Special Term locating boundary line are supported by evidence.**

In an action for the purpose of fixing the boundary line between the plaintiff and the defendants, which is not an action in ejectment or one to quiet title, and in which the defendants do not appeal from the judgment of the Special Term, the Appellate Division will not on the record presented retry the action nor dismiss the complaint or proceed to render a judgment more favorable to the defendants than that decreed at the trial.

The findings of fact by the Special Term locating the boundary line as it did in the judgment rendered, are supported by the evidence, and the judgment is affirmed.

APPEAL by the plaintiff, Manursing Island Beach Corporation, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Westchester on the 2d day of May, 1921, upon the decision of the court, rendered after a trial at the Westchester Special Term, fixing the boundary line between the property of the plaintiff and that of the defendants.

*Joseph B. Thompson* and *Ellery O. Anderson* [*P. Chauncey Anderson* with them on the brief], for the appellant.

*Howard E. White,* for the respondents.

KELLY, P. J.:

This case comes to us upon plaintiff's appeal from a judgment of the Special Term defining and locating the boundary line between

the property of plaintiff and the property of defendants on Manursing island in the town of Rye, Westchester county. The record is voluminous, comprising four books of testimony and exhibits, and it appears the trial was commenced on March 21, 1917, while the decision was not filed until November, 1920, and the formal findings of fact and conclusions of law and judgment appealed from were not filed until May, 1921. Notwithstanding the protracted trial and the voluminous record, the learned counsel for appellant says in his points that he regards the case as still " undecided " and asks this court to determine " for itself which is the true boundary line." On the other hand, the learned counsel for respondents, who have taken no appeal from the judgment, asks us to dismiss the complaint because the location of the boundary line in question was not a proper subject for determination in this equity action, or in the alternative that we affirm the judgment or give judgment " in accordance with the prayer of the answer." And both plaintiff and defendants protest that they do not desire a retrial of the action.

If the question were before us we might have some difficulty in sustaining the jurisdiction of equity to decide the dispute between the parties over the boundary line. The plaintiff in the course of the trial expressly stated that the action was not one to quiet title and that it was not in ejectment, and I am unable to find any facts alleged in the complaint warranting intervention by a court of equity in a dispute of this kind. But the learned trial judge denied defendants' motion to dismiss the action because of lack of jurisdiction for the reason that owing to the length of the trial, the voluminous character of the evidence and the advanced age of many of the witnesses, he thought it would be unjust to dismiss the action. The defendants went on with their proof, and while the court in its final decision and in the judgment entered thereon did not locate the line as the defendants claimed it should have been located, decreeing a boundary south of that claimed by plaintiff but north of the line claimed by defendants, no appeal was taken by defendants. Upon this record we conclude that we cannot undertake the retrial of the action in this appellate court, nor should we dismiss the complaint or proceed to render a judgment more favorable to defendants than has been decreed at the trial.

The location of the disputed line depended largely upon the interpretation of the descriptions contained in conveyances executed more than a century ago with more than the usual indefiniteness found in ancient documents of this kind. Owing to the physical condition of the land, which consisted of salt meadow and sedges crossed by creeks, swamps and ditches, many of which have dis-

Second Department, December, 1923. [Vol. 207

appeared from natural causes and by reason of the improvement and filling in of the land by the owners, especially in recent years, it is difficult to identify the courses and boundaries in these old deeds. The learned trial justice, who was very familiar with the locality, as appears in the record, and who, as stated in the points, visited the property during the course of the trial with counsel for plaintiff and defendants in company with Mr. Kirby, the surveyor employed at the time jointly, has located a line dividing the properties, giving the defendants a strip of beach front on the sound considerably less than they claimed, while he decides that plaintiff's contention that the boundary line excluded defendants from all frontage on the beach is not sustained by the evidence. The right to this beach frontage was the main cause of the dispute between the parties. It is stated to be very valuable at the present time, although it is evident from the record that until a comparatively recent period the *locus in quo* was a tract of sand and meadow overflowed at times of high tide and storms by the waters of the sound, and was regarded as of little value by the owners. Manursing island lying off the shore of the town of Rye, south and west of the mouth of the Byram river or Port Chester bay or harbor, runs substantially north and south in its longest dimension. It is bounded on the east by Long Island sound. Immediately to the east of Byram river and Port Chester harbor we come to the dividing line between the States of New York and Connecticut, and to the east of this dividing line the general course of Long Island sound is east and west, the sound being the southerly boundary of the mainland. The island is approximately some two miles in length and the northerly portion known as the North island consisted of high ground with a bold shore on the east or sound side; the extreme south end of the island was also comparatively high ground. From 1850 to 1870 the North island was owned or controlled by John A. Dix, the distinguished war Governor of the State, and later Minister to France. He lived on the North island and improved it and built roads and bridges connecting it with the mainland. The south end of Manursing island was occupied by the late William P. Van Rensselaer, also a well-known citizen of New York and formerly a member of the bar who had a summer home at this point. The strip of sand and meadow in the middle of the island to which I have referred was owned part by Governor Dix and part by a family named Theall and their successor, Cornell. The plaintiff claims under the Theall title and Cornell title, the defendants under deed from Governor Dix. The disputed boundary runs substantially east and west across this former waste or meadow land

to the shore of the sound.  Owing to the practically waste character of the land, there is no satisfactory evidence of adverse possession by either party, and to locate the disputed line the learned trial justice had to depend largely upon evidence of former physical conditions, the courses and dimensions set out in the deeds and the area of land granted.  It would be impossible to recite here the mass of evidence in these old writings and the arguments of the parties plaintiff and defendants based upon their interpretation of these documents.  I am free to say that it was a most difficult task for the learned trial justice to reach a definite conclusion as to the location of the disputed boundary, although as indicated in the record he had the great advantage of familiarity with the land from his boyhood.  We have carefully examined the deeds and writings in evidence, the testimony of the witnesses and the learned briefs submitted by the parties.  In the end the location of this disputed line was a question of fact for determination by the Special Term, as the action was tried and submitted for decision.  We think the findings of fact locating the line and amplified by the subsequent survey made by the surveyor Kirby are supported by the evidence.

Both the plaintiff and the defendants agree that one Andrew Lyon owned the *locus in quo* in 1762.  He owned the property under a deed from one Willett, dated April 10, 1762, which conveyed the entire North island and a tract of $7\frac{3928}{10000}$ acres with an additional $1\frac{17255}{100000}$ acres on the north end of the South island (a local designation for the southerly portion of Manursing island) with appurtenant sedge and marsh.  The boundaries of this land on the north end of the South island are extremely indefinite.  If the parties had paid as much attention to intelligible courses and boundaries as they did to defining thousandths of acres in the area of the meadow and sedge land, they would have saved their successors in title much labor and weariment of spirit.  The defendants' title comes under the will of Andrew Lyon, admitted to probate in 1809.  Lyon devised to his grandson, William Bush, " the small hammock situated south thereof " (*i. e.*, south of North island), with the salt meadow and sedge thereto appertaining.  Bush conveyed to Governor Dix in 1850.  Dix conveyed to Titus in 1870; Titus to Adam T. Sackett in 1878.  The defendants are the children of Sackett.  When this action was commenced in 1916, Lyon's holdings of the hummock and appurtenant land on the north end of the South island, devised to his grandson Bush, were apparently more extensive than the land actually claimed by the Sacketts. If this devise covered all the land owned by him at this point under the deed from Willett, the defendants' south boundary

would be much further to the south and they would be entitled to a larger strip of the sound beach than they claimed to own. But during the trial the plaintiff discovered a so-called missing deed made by Andrew Lyon in his lifetime, May 22, 1762, to one Roger Park, conveying $7\frac{3928}{10000}$ acres of this land on the South island. This conveyance left to Lyon part of the land conveyed to him by Willett and it was this remaining land, the " hummock " and appurtenant salt meadow and sedge, which he devised to his grandson Bush and which Bush conveyed to Governor Dix in 1850 in a deed reciting that the tract contained " six acres more or less."

When Willett conveyed to Lyon by deed dated April 10, 1762, he attempted to describe the land conveyed by metes and bounds, and so far as the tract of $7\frac{3928}{10000}$ acres on the northerly part of the South island is concerned he describes it as follows:

" All that seven acres & .3928 parts of an acre of salt meadow lying on that part of Manursing Island purchased of John Glover, including a part of the Wood Island (so called) neither more or less. Butted & bounded as followeth: Beginning at the north end of a certain ditch which ditch is the westermost bounds of a piece of salt meadow purchased by the said Willett and Samuel Willson of Samuel Brown, thence southerly with said ditch to a certain ditch a little southard of the southermost bounds of said meadow bought by Willet & Willson of Saml. Brown, thence easterly with said ditch unto the east end of the stones lying in or by said ditch on the west side of the Wood Island, thence still easterly a direct line to the middle of the sand beach lying on the east side of said meadow thence northerly by said sand beach six chains and ninety links to a stake or stones thence westerly northerly and southerly to the north end of a ditch where it begun. Containing within said bounds over and above the seven acres and .3928 parts granted to sd. Lyon one acre & .17225 parts of an acre which belongs to the estate of said Willson deceased. And also all that one equal half part in quantity and quality of all the sedges which said William Willet now ownes or of right ought to own on said part of Manursing Island granted by said Willet unto said Andrew Lyon. And Also One equal part in quantity & quality of all the sedges which said Willett owns on that part of Manursing Island he has this day sold to Roger Parks, Junr. And also that part of the sand beach aforesaid which is the east bounds of said seven acres .3928 parts of salt meadow lying opposite to said meadow."

The significant courses and distances in this deed which seem to have had great weight with the learned trial justice are, *first*, the south boundary of the tract conveyed, and *second*, the east boundary on the beach. The southerly boundary of the tract

conveyed is found in the second and third courses, the second course, " thence easterly with said ditch unto the east end of the stones lying in or by said ditch on the west side of the Wood Island," the third course, " thence still easterly a direct line to the middle of the sand beach lying on the east side of said meadow." These two courses describe the southerly boundary of the land conveyed by Willett to Lyon so far as the description in the deed is concerned. The third course reaches the beach. The next, or fourth, course is, " thence northerly by said sand beach six chains and ninety links to a stake or stones," and the next and final course is " thence westerly northerly and southerly to the north end of a ditch where it begun." Lyon having conveyed this property to Park, still retained title to the land on the South island north of the tract so conveyed, and it was this land so retained which passed to his grandson Bush under the devise in the Lyon will.

The plaintiff's title so far as there is any cogent evidence in the case is derived from Park; the defendants' title from Bush, the grandson of Lyon.

Therefore, the importance of the south and east boundary in the deed to Park. The south boundary runs easterly in a direct line to the beach; the east boundary extends northerly along the beach six chains and ninety links to a stake or stones. Of course the stake or stones on a beach exposed to the storms and tides of Long Island sound in 1762 was a most evanescent monument. But the significant fact is that when the grantor defined this northerly course he limited it to six chains and ninety links along the beach. It did not run to the north end of the beach or to the rock still prominent at the north end of the beach; it expressly limited the beach conveyed to six chains and ninety links. And it is upon this reasoning that the learned justice at Special Term located the boundary line in dispute in the case at bar, because he has ascertained the northerly end of this northerly course which was the location of the " stake or stones " and from that point has laid out the north boundary of the Park land which is the boundary line in dispute.

The learned counsel for the appellant argues that there is no basis for the findings of the trial justice; he points to the final course in this description which runs from the stake or stones, " thence westerly northerly and southerly to the north end of a ditch where it begun," and he says it is impossible to locate this final course from the point determined by the trial justice. But who shall say what the lay of the land was at this point in 1762, exposed to overflow of the tide, crossed and recrossed by dikes and ditches, many of which have disappeared within the memory of living witnesses. The learned counsel for appellant says that

there is a legal presumption that no physical changes have taken place, but on the evidence here such presumption cannot be indulged in as a basis for a judgment of the court. The important fact remains that Park's ownership on the beach was limited to six chains and ninety links. The plaintiff would have the court find that this northerly course ran to the north end of the beach, that it took in the entire beach up to the well-defined rock, leaving Lyon without any frontage.. We think the trial justice was justified on the evidence in rejecting this claim and in locating the north bounds of the land conveyed to Park as described in the findings and judgment as subsequently ascertained and laid out by the surveyor.

When Bush, the grandson of Lyon, conveyed the north end of the South island to Governor Dix in 1850 he stated the area of the land conveyed to be six acres more or less. The defendants called surveyors who, with the deeds and will before them, gave their expert opinions as to the location and bounds of this six acres which to some extent support the location of the line by the learned trial justice. The appellant argues that the statement of quantity of land in a deed has little or no weight in determining the boundary. This might be true, if the learned trial court had definite boundaries to guide him in reaching his conclusions, but upon the record here I think he was justified in considering all the facts and any evidence throwing light upon the situation. Evidently Bush, the grandson of Lyon, the original owner of the title, had no doubt as to his ownership of the north end of the South island. And when in 1870, twenty years thereafter, Governor Dix conveyed to Titus, the predecessor in title of defendants, he repeated the statement that the land conveyed comprised six acres more or less. That the plaintiff and its predecessors in title recognized the propriety of locating this six acres is found in the evidence that in 1900 the then counsel for the Cornell estate, owners of the land now in plaintiff, requested Mr. J. Henry Carpenter, a resident of the village of Rye and a well-known and respected surveyor of great experience, to lay off this six-acre plot on the ground in order to ascertain the location of this boundary line. And at the same time counsel frankly advised Mr. Carpenter of the dispute between the Cornells and their neighbors and wrote that he was desirous of " having the line mentioned include as little of the beach within the six acre plot as you can properly and conscientiously make it include." With his conceded familiarity with the situation, with the deeds and the Lyon will before him and with the suggestion of Mr. Cornell's counsel in mind, Mr. Carpenter laid out the six-acre tract, making a map which was received in evidence showing ownership in the Sacketts of a greater

extent of beach front than is awarded them in the judgment. And this was the conclusion reached by an experienced surveyor acting, of course, independently of the defendants.

I will not attempt to discuss here the mass of documentary evidence introduced by the plaintiff or the voluminous argument in the appellant's main points and points in reply. They have been carefully considered, but I am forced to the conclusion that the learned counsel in his zeal for his client overlooks the fact that in the end his arguments are based largely upon surmise and speculation. If this were an action in ejectment or trespass or to quiet title, as defendants claim it should have been, with the burden of proving legal title to the land claimed upon plaintiff, I have grave doubt whether on the evidence here a cause of action was made out. I do not think plaintiff can avoid its obligations by attempted resort to this so-called action in equity.

I am, therefore, of the opinion that the judgment should be affirmed. It is not surprising that in the mass of findings of fact and conclusions of law submitted to the court before and after the decision there are found findings which are said to be contradictory. They do not alter the result, but this should be remedied in the order of affirmance. While I might point out here findings of fact and conclusions of law which might well be reversed by this court, as well as the absence of definite conclusions of law in accordance with the opinion filed by the learned trial justice in deciding the case which should be made by this court, I leave this in the first instance to counsel to be included in the order which should be settled upon notice. I think it proper, however, to call attention to an obvious error in the opinion of the court as printed in the record. Where the trial justice refers to the description of the so-called seven-acre tract contained in the deed of April 10, 1762, from William Willett to Andrew Lyon, the opinion as printed omits the first or southerly course contained in the deed printed in the record as an exhibit; the word " stone " in the next course as printed, " thence easterly with said ditch unto the east end of the *stone* lying in or by said ditch," etc., should be " stones," and the words " said beach " in the following course, " thence still easterly a direct line to the middle of the *said* beach lying on the east side of said meadow," should be " *sand* beach."

The judgment should be affirmed, with costs.

Present — KELLY, P. J., RICH, JAYCOX, MANNING and YOUNG, JJ.

Judgment unanimously affirmed, with costs. Settle order on notice.